No. 63,813

STATE OF KANSAS, *Appellee,* v. DONOVAN M. BELNAVIS, *Appellant.*

(787 P.2d 1172)

Opinion filed March 2, 1990.

*John M. Duma,* of Kansas City, argued the cause and was on the brief for appellant.

*Christopher L. Schneider,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a direct appeal by Donovan Belnavis, who was convicted by a jury in Wyandotte County of three counts of sale of cocaine, contrary to K.S.A. 65-4127a. The trial court sustained the State's motion to invoke the enhancement provisions of the Uniform Controlled Substances Act, K.S.A. 65-4127a, and imposed concurrent sentences of 10 to 20 years. The sentences for sale of cocaine are to run consecutively to sentences already

imposed by the circuit court of Jackson County, Missouri, for previous drug offenses.

The facts are not in dispute. On June 20, 1988, Donovan Belnavis, a black male, was charged in Wyandotte County District Court with three counts of sale of cocaine. After a preliminary hearing, the case was set for trial on October 3, 1988.

During the trial, after voir dire, Belnavis moved for a mistrial on the grounds that the prosecutor systematically excluded black veniremen from the jury through use of peremptory challenges. The prosecutor denied striking the two veniremen based upon their race and stated that he struck Miss Cooper because she did detail work with photography and struck Miss Small because she was a young person likely to be sympathetic to Belnavis. The motion for mistrial was denied. Trial proceeded, and on October 4, 1988, the jury returned a guilty verdict on all counts of sale of cocaine.

A post-trial hearing was held on Belnavis' motion for a new trial. Belnavis' motion was based upon the State's use of peremptory challenges to exclude two black persons from the jury panel. The district court denied Belnavis' motion and Belnavis appealed.

The sole issue on appeal is whether the State exhibited purposeful racial discrimination in using peremptory challenges to strike two black persons from the jury panel.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the United States Supreme Court found that the Equal Protection Clause of the United States Constitution forbids prosecutors from exercising peremptory challenges against potential jurors solely on account of their race or on an assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant. 476 U.S. at 89.

In order to question the State's use of peremptory challenges, a defendant must make a prima facie showing of purposeful discrimination in the State's selection of the jury. In *Batson*, the court set forth requisite elements which a defendant must show to establish purposeful discrimination:

"[T]he defendant first must show that he is a member of a cognizable racial group [citation omitted], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.

Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation omitted.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." 476 U.S. at 96.

Once the defendant makes a prima facie showing of purposeful discrimination, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The prosecutor's explanation, however, need not rise to the level of justifying an exercise of a challenge for cause. 476 U.S. at 97. On the other hand,

"the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. [Citations omitted.] . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' " 476 U.S. at 97-98.

This rule, as stated in *Batson*, was adopted in toto by the Kansas Supreme Court in *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (1987).

In the present case, Donovan Belnavis is a 22-year-old black male of Jamaican descent. The original venire panel consisted of thirty-three people. The record shows that four of the first twenty-four people on the venire list were also black. Each party exercised six peremptory challenges as provided by statute. K.S.A. 22-3412(c). The prosecution used its two final peremptory challenges to exclude two black females from the jury panel. Belnavis' attorney also used a peremptory challenge to exclude a black male from the panel for the reason that he knew one of the State's witnesses. From the next three names on the venire list, each party exercised one peremptory challenge and the remaining venireman was seated as an alternate. Therefore, Belnavis was ultimately tried by a jury which included one black member and one black alternate.

Belnavis has shown that he is a member of a cognizable racial group and that the State used its peremptory challenges to strike black persons from the jury panel. Furthermore, Belnavis is entitled to rely on the fact that peremptory challenges allow those who are of a mind to discriminate to do so. Thus, under the rule set forth in *Batson* and adopted by this court in *Hood*, Belnavis made a prima facie showing of purposeful discrimination by the State. It then became the State's burden to come forward with a racially neutral explanation for challenging the black persons.

In order to determine whether the State has successfully provided a race-neutral explanation for the peremptory challenges, we must compare the characteristics of the individuals stricken with those not stricken. A prosecutor's explanation fails to be racially neutral if characteristics of a person struck are present in white panel members not challenged by the State. *U.S. v. Wilson,* 853 F.2d 606, 610 (8th Cir. 1988).

At the post-trial hearing on this issue, the prosecutor stated that he challenged Miss Cooper because she had mentioned that she did detail work on photography. The prosecutor explained that he believed there would be great discrepancies in the details of one of the State's witnesses and for this reason was concerned about having someone on the jury who might pay an inordinate amount of attention to details.

Standing alone, this explanation appears racially neutral. In most instances, the prosecution knows at the time of voir dire the strengths and weaknesses of its case. Therefore, it is not unusual that the prosecution would challenge those individuals who might focus more readily upon the weaknesses of the case. In the case at hand, the prosecution knew there would be discrepancies in the testimony of a police officer and claimed that Miss Cooper, because of her employment as a detail worker on photography, would focus upon this factor more so than other individuals on the jury panel. This explanation can stand as a race-neutral reason for challenging Miss Cooper in light of the *Batson* and *Hood* rule that a prosecutor's explanation need not rise to the level of justifying an exercise of a challenge for cause, except for a comparison of white jurors who were not challenged. *Batson,* 476 U.S. at 97; *Hood,* 242 Kan. at 120. The record reveals that several white individuals had employment which involved a

great deal of work with details. One juror was a sign language interpreter. Another worked as a computer technician. A third juror was employed as a comptroller and another as a secretary. None of these jurors were challenged. This convincingly refutes the State's racially neutral reason for challenging Miss Cooper.

For his sixth challenge, the prosecutor explained in response to a motion for mistrial that he challenged Miss Small because she was a young, single mother, with a 7-month-old baby. For this reason, the State was not willing to leave an individual on the panel who might be easily distracted by having a young child and being a single parent.

The record shows Belnavis is a twenty-two-year-old black male. Miss Small is at least twenty-six-years-old, based upon her answer during voir dire that she had lived in Wyandotte County for that period of time. Striking a potential juror because of similarity in age with the defendant does not constitute impermissible discrimination. *U.S. v. Garrison*, 849 F.2d 103, 105 (4th Cir.), *cert. denied* 488 U.S. 996, 102 L. Ed. 2d 591 (1988). However, when we examine the record we see that two white jurors, although married, had two-year-old children and a third juror had children under the age of ten. Thus, the characteristics articulated to explain a neutral reason for challenging the black venireman were present in white jurors who went unchallenged. This is evidence of impermissible purposeful discrimination by the State. *U.S. v. Wilson*, 853 F.2d at 610. The State's explanation further lacks credibility in light of the fact that no person, including Miss Small, answered affirmatively to the prosecution's request as to whether there was any reason he or she would not be able to sit for several days as an impartial juror due to concern about family or friends at home.

In *U.S. v. Garrison*, 849 F.2d 103, the prosecutor stepped forward with an explanation as to why he challenged three black veniremen. The prosecutor stated that two of the black veniremen had chatted during voir dire, indicating to him boredom and disdain for the process. 849 F.2d at 105. The appellate court found the explanation a racial-neutral reason and ruled the district court did not err in finding the explanation credible. 849 F.2d at 106.

In the present case, the prosecution did not advance an explanation which indicated that Miss Small was distracted from the proceedings. Rather, the State simply stated it believed she might become distracted because she had a young child. However, because other white veniremen also had young children and remained on the jury panel, the prosecution's proffered reason for challenge does not withstand scrutiny.

We hold the State failed to present a racially neutral reason for peremptorily challenging Miss Cooper and Miss Small. The judgment of the district court is reversed and this case is remanded for a new trial.

McFARLAND, J., dissenting: I believe the majority has improperly expanded the holding of *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), as adopted in *State v. Hood,* 242 Kan. 115, 744 P.2d 816 (1987).

In *Batson,* the prosecutor used peremptory challenges to strike all black persons—a total of four. Here, one black juror and a black alternate remained. Obviously, no systematic exclusion of black persons from the jury was involved herein. The State was obligated to exercise all of its peremptory challenges even though it might well have been satisfied with all of the jurors.

By way of explanation, the prosecutor stated Miss Cooper's responses at voir dire indicated that she did a great deal of detail work in her photography job. The State stated this was a concern because one of the police officer witnesses had been rather sloppy in his work and there would be discrepancies in his testimony. The State was apparently worried that because Cooper's job involved precision work she would be more critical of this officer's testimony than a juror with a less precision-orientated job. This is a racially neutral reason for exclusion.

As to Miss Small, the prosecutor took her off because she was about the same age as defendant and, for that reason, might be more sympathetic to him. Additionally, the prosecutor was concerned that as Miss Small was a single parent with a seven-month-old child she might be more easily distracted from performing her jury service. There is no indication any white juror of the same age was left on the jury or that any white person who was

a single parent of a young child was excluded. These articulated reasons were racially neutral.

I would affirm the district court.