No. 64,992

STATE OF KANSAS, *Appellee*, v. MELVIN SLEDD, *Appellant*.

(825 P.2d 114)

Opinion filed January 17, 1992.

*Rick Kittel,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, *Michael L. McCoy,* assistant appellate defender, and *Steven R. Zinn,* deputy appellate defender, were with him on the briefs for appellant.

*Jean M. Schmidt,* assistant district attorney, argued the cause, and *Jennifer O'Connell,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Melvin M. Sledd, Jr., appeals his jury trial conviction of involuntary manslaughter (K.S.A. 21-3404).

The underlying facts are only peripherally involved in the single issue raised on appeal. The factual summary will be limited, accordingly, to facts that relate to the issue. The victim was two-and-one-half-year-old Michael Emery, who resided in Topeka with his mother, younger brother, and the defendant, who was the mother's boyfriend. On July 5, 1989, Medevac personnel responded to an emergency call. Michael was not breathing when Medevac arrived. He was pronounced dead shortly thereafter. The conclusion at the autopsy was that the child had been repeatedly struck in the abdominal area approximately 24 hours before his death. Numerous bruises were noticed on various parts of his body. It was the State's theory that the child had been beaten by the defendant, said beating having resulted in the child's death. Defendant was charged with first-degree murder but convicted of the lesser included offense of involuntary manslaughter.

The sole issue on appeal is whether the trial court violated defendant's constitutional rights to a fair trial when it denied defendant's challenge to the State's removal by peremptory challenge of two black prospective jurors. The relevant jury selection facts must be set forth in some detail.

As this case was tried on the first-degree murder charge, 36 prospective jurors were qualified for cause with the State and defendant each to exercise 12 peremptory challenges. Defendant is black, as were 4 of the 36 prospective jurors. The procedure employed in exercising the challenges was for the State to write the name of its first challenge on a piece of paper and pass it to defense counsel, who wrote thereon the name of his first challenge. The paper was then passed back and forth until all challenges had been exercised. The State's challenge number seven was to a black woman, Marcella Brown. The State's twelfth challenge was to a black man, Gary Lassiter. Two black jurors remained on the panel at this time, although, apparently, one of those was subsequently removed through the exercise of defendant's final peremptory challenge. Immediately after the State

exercised its peremptory challenge removing Lassiter, the following occurred:

"MR. GREENO [defense counsel]: Under the *Batson* decision, we have to make our record. The State has elected as strike number twelve to strike Gary Lassiter. Ah, strike number seven for the State was Marcella Brown. And I think we would have four people, four black people, from the panel that are the same race as my client. As I recall the decision under *Batson*—

. . . .

"MR. GREENO: As I understand it, the Court there talked about the totality of relevant facts which indicate that the State is using, you know, the race of the prospective juror as the reason for the strike.

"In this particular situation, certainly Mr. Lassiter is a black man, as is Mr. Sledd. He has exhibited that he is qualified to be a juror in this particular case and he is of good moral character, obviously that he has the intelligence necessary to ingest the facts of this particular case. He has indicated that he understands the facts, you know, as we have talked about his obligation as a juror. He has not shown any bias whatsoever. In fact, he has indicated that he could follow the instructions that the Court gave him, that he has children of his own and that he loves children. He has made a conscious effort to avoid the media. And I think he has demonstrated every ability to be a fair and impartial juror in this particular case. And under those circumstances, he hasn't leaned any way toward the defense or to the State. *And I think it's clear in this particular situation that, you know, there is some question as to whether or not the government has exercised this challenge for the appropriate basis.*

"THE COURT: All right." (Emphasis supplied.)

The State then proceeded to state its reasons for the exercise of the Lassiter challenge, the thrust of which was that he was a leader in a church which approved corporal punishment. The State was concerned that Mr. Lassiter would not be a good choice for a juror in a case involving the beating of a child. Comments were then made by both counsel relative to Mr. Lassiter's answers to questions on corporal punishment of children.

The trial court then stated:

"THE COURT: Thank you. The standard for this determination is set forth in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and more particularly at . . . IIIc section of the opinion.

"Just to summarize those, the Court states that the defendant is required to establish a prima facie case of purposeful discrimination in selecting the petit jury, and in determining that may rely solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case—and I'll just say parenthetically, I'm paraphrasing and not quoting—to establish such a case, the defendant must show that

he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. And, finally, defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in impaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination. And in deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.

"The Court gives a couple of examples. One example is a pattern of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. The Court points out that these examples are merely illustrative, and that the Court goes on to say that the trial court's experience in supervising voir dire will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

"Now, once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. And the ultimate requirement is that the prosecutor must articulate a neutral explanation related to the particular case to be tried. And the trial court will then have the duty to determine if the defendant has established purposeful discrimination.

"So with these rules in mind, the Court will proceed with its decision.

"In the case at bar, we have the State having exercised all of the peremptory challenges, the defendant has one peremptory challenge left. Out of thirty-six potential or prospective jurors passed for cause, the State has exercised peremptory challenges towards two black potential or prospective jurors. There are two remaining on the jury unless one of those two would be removed by the twelfth and final strike of the defendant.

"In reviewing the pattern of strikes against black jurors, the Court does not find or is not persuaded that they give rise to the inference of discrimination. The State had twelve peremptory challenges, and it's true that they have used two of the twelve in regard to two out of four black jurors. The other black juror is not in contention here. Her husband works for the Kansas Highway Patrol. She was removed by State challenge. But certainly if there had been an inclination, the State in the first instance could have exercised challenges to all four black prospective jurors.

"In reviewing the prosecutor's questions and statements during voir dire examination and in exercising the prosecutor's challenges, the Court sees nothing that would support an inference of discriminatory purpose. Those questions and statements were neutral in the Court's view.

"In considering other circumstances and all relevant circumstances and the totality of the circumstances, I'm not persuaded at this point the defendant has established or made a prima facie showing that there has been a discriminatory purpose on the part of the prosecutor in the case at bar."

The trial court then proceeded to hold that even if a prima facie showing had been made, then the State had shown adequate racially neutral reasons for its actions. In an unpublished decision filed June 7, 1991, the Court of Appeals held this determination was reversible error. The matter is before us on petition for review.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the United States Supreme Court held that the striking of black venire members based on racial grounds or the belief that black jurors will be sympathetic to a defendant of their own race violates the Equal Protection Clause of the United States Constitution. 476 U.S. at 89. In its ruling, the Court stated that for a defendant to prove discrimination on the part of the prosecution:

"[T]he defendant first must show that he is a member of a cognizable racial group [citation omitted], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation omitted.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race . . . ."

. . . .

"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. [Citations omitted.] But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. [Citations omitted.] . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirm[ing] [his] good faith in making individual selections.' [Citation omitted.] . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried." 476 U.S. at 96-98.

The *Batson* court gave an example of how a prima facie case might be established: "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." 476 U.S. at 96-97. Justice White addressed the establishment of a prima facie case in his concurrence: "The Court emphasizes that using peremptory challenges to strike blacks does not end the inquiry; it is not unconstitutional, without more, to strike one or more blacks from the jury. The judge may not require the prosecutor to respond at all." 476 U.S. at 101.

The United States Supreme Court has subsequently reaffirmed and extended *Batson*. In *Powers v. Ohio*, 499 U.S. ___, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), the court held that a white defendant may challenge the State's peremptory strikes on racial grounds, and in *Edmonson v. Leesville Concrete Co.*, 500 U.S. ___, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991), the Court extended *Batson* to include civil suits. However, these extensions do not affect the case before us, so we will confine our discussion to *Batson*.

The ruling in *Batson* was adopted by the Kansas Supreme Court in *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (1987) (*Hood I*), and since that time we have applied the ruling in the cases of *Smith v. Deppish*, 248 Kan. 217, 807 P.2d 144 (1991); *State v. Belnavis*, 246 Kan. 309, 787 P.2d 1172 (1990); and *State v. Hood*, 245 Kan. 367, 780 P.2d 160 (1989) (*Hood II*).

Before proceeding further, some discussion of our holding in *State v. Belnavis*, 246 Kan. 309, is necessary. In *Belnavis*, we quoted from *Batson* the three aspects of what must be shown by a defendant in order to make the requisite prima facie case that the prosecution has excluded a juror or jurors based upon race. We go on, however, to state:

"Belnavis has shown that he is a member of a cognizable racial group and that the State used its peremptory challenges to strike black persons from the jury panel. Furthermore, Belnavis is entitled to rely on the fact that peremptory challenges allow those who are of a mind to discriminate to do so. Thus, under the rule set forth in *Batson* and adopted by this court in *Hood*, Belnavis made a prima facie showing of purposeful discrim-

ination by the State. It then became the State's burden to come forward with a racially neutral explanation for challenging the black persons." 246 Kan. at 312.

This language, and its corresponding syllabus (Syl. ¶ 1), omits the third portion of the *Batson* requirements for making a prima facie showing. We hereby disapprove said omission in *Belnavis*.

The trial court here held that the defendant had failed to make the requisite prima facie showing that the State had excluded black prospective jurors on account of their race.

Whereas the scope of review on a trial court's finding that the State has expressed racially neutral reasons is that of abuse of discretion (*Smith v. Deppish*, 248 Kan. 217), appellate review of a trial court's determination whether or not a prima facie showing has been made is plenary as it involves a question of legal sufficiency. As reasoned in *State v. Butler*, 795 S.W.2d 680, 687 (Tenn. Crim. App. 1990):

"*Batson* was based on Title VII . . . . The Court suggested that those cases 'have explained the operation of *prima facie* burden of proof rules.' 476 U.S. at 94 n. 18, 106 S. Ct. at 1721-22 n. 18. The federal courts treat the *prima facie* determination as a question of law rather than one of fact; 'the question is one of legal sufficiency, and an appellate court's review is plenary. [Citation omitted.]"

The format employed in the hearing on the objection creates some problems in the analysis of the issue. The appropriate procedure would have been for the defense to proceed to state whatever it has in support of the requisite prima facie showing, and for the court, at that point, to determine whether or not the defense has made the prima facie showing. If the trial court finds the showing has not been made, then that is technically the end of the matter. Under *Batson*, the State is asked to respond only if the trial court has found that the prima facie showing has been made. As a practical matter, it is the better practice to have the State respond, and then for the court to make a determination on whether the reasons are racially neutral. This procedure would eliminate remands for such a determination if the trial court is held to have erred in holding the defendant had failed to make the prima facie showing.

Here the defendant offered only the facts that he was black and that the State used 2 of its 12 peremptory challenges to

exclude 2 of 4 black prospective jurors. The balance of defense counsel's argument consisted of expressions of his opinion that Lassiter would be a suitable juror. These comments were in anticipation of the reasons the State would offer relative to Lassiter's exclusion and are really irrelevant to the prima facie showing aspect of the matter. There was no claim that the State had any pattern to exclude blacks.

We conclude that the trial court correctly held that the defendant had failed to make the prima facie case required by *Batson*. Having so concluded, we do not reach the issue of whether the trial court's acceptance of the State's proffered reasons for exclusion constituted a breach of trial court discretion.

The judgment of the Court of Appeals is reversed. The judgment of the district court is affirmed.