## A00A2121. GIBSON v. CARTER.
(545 SE2d 698)

BARNES, Judge.

Clarence Carter sued Terry Gibson for damages arising from a collision that occurred at an icy intersection when Gibson's pickup truck could not stop for a stop sign and was struck by Carter in his pickup truck, which was traveling with the right of way. The jury returned a verdict in favor of Carter for medical expenses in the amount of $2,133.86. Later, however, the trial court granted Carter's motion for a new trial. Upon retrial of the case, the trial court granted Carter's motion for a directed verdict on liability, and the jury returned a verdict in Carter's favor for $30,000.

Gibson now appeals that judgment. He contends the trial court erred by granting the new trial, by directing a verdict for Carter on liability, and by failing to give certain charges he requested concerning issues of contributory and comparative negligence. As we find that the trial court erred by granting the directed verdict to Carter on liability, we must reverse.

1. We find no merit in Gibson's contention about the grant of a new trial. A trial court's first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding

judge. OCGA § 5-5-50; *Head v. CSX Transp.*, 271 Ga. 670, 672 (3) (524 SE2d 215) (1999).

In Georgia,

> the trial judge is vested with the strongest of discretions to review the case and to set the verdict aside if he is not satisfied with it. As required by OCGA § 5-5-50, the first grant of a new trial is not to be reversed by an appellate court unless the verdict set aside by the trial court was absolutely demanded. The record presented to this Court does not demand such a reversal.

(Citations and punctuation omitted.) *Thomas v. Wiley*, 240 Ga. App. 135, 137 (2) (522 SE2d 714) (1999). As the original verdict was not absolutely demanded by the evidence, we do not find that the trial court abused its discretion in granting a new trial.

2. Gibson further contends the trial court erred by granting Carter a directed verdict on liability in the second trial.

> A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence, with all reasonable deductions and construed in favor of the non-moving party, demands a certain verdict. Further, the trial court is not authorized to weigh the evidence or decide issues of fact.

(Citations and punctuation omitted.) *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992). Additionally, issues of negligence, diligence, contributory negligence, proximate cause, and the exercise of ordinary care for one's safety ordinarily are to be decided by a jury, and a court should not decide them except in plain and indisputable cases. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 156 (1) (A) (256 SE2d 916) (1979).

In the second trial, Carter testified that he had traveled the road earlier that day without incident. He also testified that the conditions were slick and treacherous because ice was all over the road. It had been raining, sleeting, and even snowing slightly for two or three days. Nevertheless, he believed that while the road was "slick," it was "travelable." He testified that he did not see Gibson's truck until impact and that he had no time to do anything but duck and hit him. According to Carter, Gibson was just about right in front of him in the intersection before he saw him. He also testified that, because Gibson appeared so suddenly, even if the road had been "dry as powder" it would have made no difference. Carter also testified that he "ducked down" in his seat rather than attempting evasive action because there was nothing he could do to avoid the accident; he con-

tended that he did not have time to react in any way other than to collide with Gibson's car. He believed that applying his brakes would have been futile because his brakes would not have stopped him at any speed because of the ice.

Carter testified that before the accident his attention was directed toward a pickup which was approaching from the other direction. He was concerned that this truck might have difficulties that would cause him problems. This truck was on the other side of the intersection from Carter because it did not pass through the intersection. Instead, Gibson's pickup struck it after the collision with Carter.

Carter testified that he was traveling 20 to 25 mph and the speed limit was 35 mph. He also testified that he had traveled this road for years and he was aware of the dangerous intersection. He further testified that the condition of the road changed between the first time he used it that day and the accident because someone had graded the road and scraped away the snow and slush so that the surface was down to the ice.

During the second trial, however, Gibson introduced Carter's testimony from the first trial in which he stated that he saw Gibson's truck and applied his brakes for a few seconds before the impact.

Gibson testified that he knew the road was icy. He had traveled on the snow for several days, and he "tried to stop that day just like I had every other day, but they had graded the road or something and I couldn't get stopped." He further testified that he had no problem stopping when he traveled the road earlier that day. He also knew that he would have to stop at the stop sign, but that he could not because his car started sliding when he started to brake. He did not begin to stop his vehicle soon enough to keep from sliding through the intersection. He also testified that he did not know whether there was anything Carter could have done to avoid the accident.

Because of Carter's conflicting testimony on when he saw Gibson's pickup and when he saw the approaching pickup, whether he had time to brake, his testimony that he could not stop because of the ice, and the other evidence in the case, we find that a jury issue existed on whether and to what extent Carter's own negligence may have contributed to the accident because he also may have been driving too fast for conditions. Although Carter was authorized to proceed at a reasonable speed and to assume that other drivers will obey the rules of the road and yield the right of way (*Kicklighter v. Jones*, 202 Ga. App. 654 (415 SE2d 302) (1992)), he was still obliged to operate his vehicle at a reasonable and prudent speed. Under our traffic law, Carter was required not to

drive [his] vehicle at a speed greater than is reasonable and

prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

OCGA § 40-6-180.

Thus, Carter was not entitled to drive through the intersection, without regard to the conditions existing.

Even if the other driver is guilty of negligence per se or has otherwise failed to exercise ordinary care in approaching the intersection, this will not relieve the driver having the right-of-way of his own legal duty to exercise ordinary care under the facts and circumstances of the situation. It is his duty to exercise ordinary care, to remain alert in observing the vehicles approaching the crossing, and to exercise ordinary care to avoid a collision, after he sees or *by ordinary diligence could have seen* that one is threatened or imminent.

(Citation and punctuation omitted; emphasis in original.) *Richardson v. Chesky*, 235 Ga. App. 28, 29 (2) (508 SE2d 441) (1998).

Here, Carter admitted that he could see an approaching pickup, but stated that he did not see Gibson's truck until it was in the intersection right in front of him. Therefore, we find a jury issue existed on whether he used ordinary care to avoid the collision after he saw or should have seen that a collision was threatened. Finally, because Carter admitted that it had snowed, the road was icy and treacherous, and he could not stop because of the ice, a jury could infer from these facts that Carter was traveling too fast for conditions or that he was otherwise negligent. See *Vaughan v. Glymph*, 241 Ga. App. 346, 349 (526 SE2d 357) (1999). Therefore, issues existed on whether and to what extent he failed to avoid the consequences of his own actions. OCGA § 51-11-7. Even though a jury may ultimately find that Gibson was negligent, that does not eliminate the possibility that the jury could also find that Carter's own negligence was responsible for his damages to some degree and that his damages should be reduced accordingly. Therefore, the trial court erred by directing a verdict for Carter on liability.

3. Because we have reversed the directed verdict, we need not

address the trial court's refusal to give charges that Gibson requested.

*Judgment reversed. Blackburn, C. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 27, 2001.

*Davis & Kreitzer, John W. Davis, Jr., Steven W. Kreitzer,* for appellant.

*Clifton M. Patty, Jr.,* for appellee.