COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Willis and Clements
Argued at Alexandria, Virginia


EDUARDO VELAZQUEZ
                                        OPINION BY
v.    Record No. 1838-99-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      MARCH 27, 2001
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Dennis J. Smith, Judge

          Clinton O. Middleton, Deputy Public Defender,
          for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Eduardo Velazquez (appellant) was convicted in a jury trial

of rape, in violation of Code § 18.2-61.  On appeal, he contends

the trial court erred in allowing a sexual assault nurse examiner

(SANE) to (1) give expert testimony regarding the cause of the

victim's injuries and (2) testify regarding the ultimate fact in

issue and (3) in finding the evidence was sufficient to prove his

guilt.  Finding no error, we affirm.

                                I.

     Under familiar principles of appellate review, we examine the

evidence in the light most favorable to the Commonwealth, the

prevailing party below, granting to that evidence all reasonable

inferences fairly deducible therefrom.  See Juares v.

<u>Commonwealth</u>, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that on March 18, 1997, A.L., the fifteen-year-old victim, went to appellant's house to retrieve a book she had lent to appellant's wife. Appellant told A.L. to sit down and attempted to kiss her. A.L. told appellant, "no," and said she needed to leave. A struggle ensued, and A.L. and appellant fell to the floor with appellant on top of A.L. Appellant pulled A.L.'s pants and underwear down to her knees as A.L. continued to tell appellant, "no," and tried to get up from the floor. Appellant also pulled his pants down to his knees. While appellant was on top of A.L. with his waist "between [A.L.'s] knees" and head "over top of [her] stomach," A.L. felt a sharp pain "inside of [her] vagina area." Appellant's "bottom half" was "[m]aking an up and down movement" when she felt the pain in her vagina, and his hands were on the floor on either side of her. Appellant admitted he touched and put his fingers in her. After five minutes of struggling with A.L., appellant became "irritated" and stood up. A.L. dressed and left.

Later that evening, A.L. told her mother what happened. Her mother took her to Fairfax Hospital where she was examined by Barbara Patt (Patt), a sexual assault nurse examiner (SANE). Patt was allowed to testify, over appellant's objection, as an "expert in the diagnosis of a sexual assault." She testified that in her opinion the physical findings she made regarding A.L.'s injuries were "inconsistent with consensual intercourse." Appellant

-

objected to Patt's testimony regarding causation of the injuries and on the ground that Patt's testimony concerned the "ultimate fact in issue."  The trial court overruled appellant's objection, and he was found guilty of rape by the jury.

## II.  Expert Witness Designation and Testimony

Appellant first contends the trial court erred in allowing Patt, a SANE nurse, to testify as an expert witness regarding the cause of the victim's injuries.  Appellant argues that Patt lacked the expertise required to allow her to state "an expert medical opinion regarding the cause of the alleged victim's injury." Appellant also contends Patt's testimony that the "alleged victim's injuries were consistent with non-consensual intercourse and inconsistent with consensual intercourse" was improper testimony on the ultimate issue.  We address these issues seriatim.

## A.  Patt's Qualifications as an Expert Witness

"The issue whether a witness is qualified to render an expert opinion is a question submitted to the sound discretion of the trial court." Combs v. Norfolk and Western Ry. Co., 256 Va. 490, 496, 507 S.E.2d 355, 358 (1998) (citations omitted).  However, "[t]he record must show that the proffered expert witness has sufficient knowledge, skill, or experience to render [her] competent to testify as an expert on the subject matter of the inquiry." Id. (citations omitted).

-

A witness qualifies as an expert if "because of his skill, training, or experience[s], he is better able to form a more accurate opinion as to the matter under consideration than is an ordinary person." . . . [S]pecialized formal training [i]s unnecessary, . . . [and] experience alone [can] qualify one as an expert, . . . . [A]s long as the testimony is based upon information of the "type reasonably relied upon by experts in the field," it would be proper to admit it.

Utz v. Commonwealth, 28 Va. App. 411, 424, 505 S.E.2d 380, 386 (1998) (citation omitted).  An expert is qualified as long as he or she possesses specialized knowledge that will assist the trier of fact to understand the evidence presented or to determine a fact in issue.  See id.  "The fact that a witness is an expert in one field does not make him an expert in another field, even though the two fields are closely related."  Combs, 256 Va. at 496, 507 S.E.2d at 358.

In the instant case, Patt became a nurse following a "three year 33 month" diploma program at Mercy Hospital.  She was a registered nurse for twenty-six years, had sixteen years of emergency nursing experience and three and one-half years of neurosurgical nursing experience.  In 1991, she took a specialized course at Cabrio College to become a sexual assault nurse examiner.  The course required forty hours of classroom education and forty hours of hands-on clinical instruction.  She received additional training in crisis intervention, physical assessment, injury recognition, documentation, evidence collection,

-

photography and injury assessment.  Patt was taught to compare and contrast normal and abnormal findings in a physical examination as part of her training in injury assessment.  This training also included clinical work.

Patt worked as a SANE nurse for six and one-half years before becoming the clinical coordinator and nursing supervisor at Fair Oaks Hospital.  While working as a SANE nurse, Patt performed approximately 350 adult examinations and 150 examinations of children.  She also witnessed or "chaperoned"[1] thousands of pelvic examinations done by physicians and discussed their findings.  Patt also participated with other SANE nurses in peer review of their examinations, using tapes, photographs and reports.  She had previously been qualified to give expert testimony by many courts.

After reviewing her training and qualifications, the trial judge qualified her to testify as "an expert in the diagnosis of a sexual assault."[2]  We hold that based upon Patt's training and experience she had knowledge concerning matters beyond a lay person's common knowledge and would assist the jury in understanding the evidence.  See Utz, 28 Va. App. at 423, 505

---

[1] Hospital policy required a female chaperon to be present with the physician on duty at all times during any pelvic examination in the emergency room.

[2] In his brief, appellant alleges that Code §§ 54.1-2900, 54.1-2903 and 54.1-3000 do not allow SANE nurses to provide a medical diagnosis.  However, appellant did not raise this issue before the trial court and, therefore, appellant cannot raise it for the first time on appeal.  See Rule 5A:18.

-

S.E.2d at 386.  The trial court did not abuse its discretion in allowing Patt to testify as "an expert in the diagnosis of a sexual assault."[3]

B.  Patt's Testimony Regarding the Cause of the Victim's Injury

The issue of whether a SANE nurse can testify as an expert regarding the cause of trauma in a sexual assault is a case of first impression for this Court.[4]  However, a recent case decided by the Court of Appeals of Georgia addressed the issue of whether a SANE nurse was properly qualified as an expert in "the field of examination of sexual assault victims."  Griffin v. State, 531 S.E.2d 175, 180 (Ga. Ct. App. 2000) (reconsideration denied March 30, 2000; cert. denied, September 8, 2000).  The SANE nurse in question had worked in women's health since 1971 and as an obstetrical nurse with gynecological experience for twenty-three years.  She had specialized training in the examination of victims of sexual assaults and in the collection of evidence from sexual

---

[3] Appellant did not argue before the trial court or on appeal that the science underlying Patt's testimony is not "one reasonably relied upon by experts in the field."  Therefore, we do not address the issue of whether the science underlying Patt's testimony is reliable.

[4] The Virginia Supreme Court held that a SANE nurse's testimony that a victim's injury was not consistent with consensual, first time intercourse was not testimony regarding the ultimate issue of fact.  See Hussen v. Commonwealth, 257 Va. 93, 99, 511 S.E.2d 106, 109 (1999).  However, in Hussen, the appellant did not argue that the SANE nurse lacked the requisite expertise to testify regarding causation.  Thus, the issue of whether a SANE nurse can testify regarding causation of injury remains a case of first impression.

-

assaults.  As a SANE nurse, she performed approximately 100

examinations at a rape crisis center.  Looking at her

qualifications, the Court of Appeals of Georgia held that the

trial court properly qualified the SANE nurse as an expert in "the

field of examination of sexual assault victims."  Id.; see also

Kent v. State, 538 S.E.2d 185, 188 (Ga. Ct. App. 2000) (SANE nurse

testified as an expert that "the multiple tearing she observed in

the victim's vaginal area was consistent with the use of force and

not with normal sexual intercourse").[5]

   Appellant relies on Combs, 256 Va. 490, 507 S.E.2d 355, for

the proposition that no expert witness can give an opinion

regarding causation unless the person is also a licensed medical

doctor.  We find that interpretation unsupported by an analysis of

the case.  In Combs, a witness was qualified as an "expert witness

_____

     [5] See also Chevez v. State, 2000 WL 1618459 (Tex. Ct. App.
2000) (unpublished opinion) (SANE nurse allowed to testify
regarding causation when the SANE nurse took a forty-eight hour
course over three weekends in 1995 on sexual assault examinations,
performed three examinations with a pediatrician present, had
conducted a total of twenty examinations, delivered presentations
to police departments on the examinations and periodically met
with other nurses and an obstetrician to review their cases and
photographs); State v. Shipley, 1997 WL 21190 (Tenn. Crim. App.
1997) (unpublished opinion) (SANE nurse permitted to testify
regarding causation of injury; SANE nurse had been a registered
nurse for eighteen years, was an instructor at a nursing school,
and was an examiner at a sexual assault center); Gonzales v.
State, 1991 WL 67061 (Tex. Ct. App. 1991) (unpublished opinion)
(SANE nurse qualified to testify as either a lay witness or expert
witness that victim's condition was consistent with "being a
victim of sexual assault . . . [and] complainant's physical
condition would not be usual where sexual activity had been
consensual").

on the subject of biomechanical engineering." Combs, 256 Va. at 494, 507 S.E.2d at 357.  The witness had a "bachelor's degree in mechanical engineering, a master's degree in medical science, and a Ph.D. in fluid, thermal and aerospace sciences, with a specialization in biomedical engineering." Id.  "He is a professor of engineering, science, and mechanics and is the director of the biomedical engineering program at Virginia Polytechnic Institute and State University." Id.  Although the witness "had completed all the academic work required for a medical degree, [he] had not completed a medical internship or residency and was not licensed to practice medicine." Id.  Combs held that an expert in "the field of biomechanical engineering" could not testify as to medical causation even though he had completed the "academic work required for a medical degree" because "[t]he fact that a witness is an expert in one field does not make him an expert in another field, even though the two fields are closely related." Combs, 256 Va. at 496, 507 S.E.2d at 358.  Thus, the Court held that an expert in "the field of biomechanical engineering" was not an expert in "medical causation." Id.

In the instant case, Patt was trained as a medical nurse with specialized training as a sexual assault nurse examiner in injury recognition and treatment of sexual assault victims.  She was qualified as "an expert in the diagnosis of a sexual assault," and her expertise clearly encompassed the area about which she

-

testified.  She personally observed the victim and the tests she administered showed A.L.'s injuries to be a "recent injury" with "no lubrication," indicating an absence of the human sexual response.  She concluded her descriptive testimony by stating that in her opinion her findings were "inconsistent with consensual intercourse" because the injuries A.L. had are "consistent with non-consensual intercourse."  As "an expert in the diagnosis of a sexual assault," she possessed sufficient knowledge, skill, training and experience in the diagnosis of sexual assaults to qualify as an expert in the field.  Accordingly, we hold that the trial court did not err in allowing her to testify regarding her observations and her conclusions based upon those observations.

C.  Patt's Testimony on an Ultimate Issue of Fact

Appellant further contends Patt impermissibly testified on the ultimate issue of fact when she stated that her findings were "inconsistent with consensual intercourse" because A.L.'s injuries were "consistent with non-consensual intercourse."  "Expert opinion on an ultimate fact in issue is inadmissible in a criminal case because it 'invade[s] the province of the jury.'"  Jenkins v. Commonwealth, 254 Va. 333, 336, 492 S.E.2d 131, 132 (1997) (quoting Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992)).  This case is factually similar to Hussen v. Commonwealth, 257 Va. 93, 511 S.E.2d 106 (1999), where a sexual assault nurse examiner testified that the injuries of the victim

-

"are not consistent with a virgin having sex for the first time."

Id. at 97, 511 S.E.2d at 108.  The Supreme Court held:

> Brown's testimony was not an opinion that the
> sexual intercourse between the defendant and
> the victim was against her will.  Rather,
> Brown's testimony, which must be viewed as a
> whole, reflects her opinion that the unique
> nature of the victim's laceration,
> particularly the location of the injury, was
> not consistent with consensual, first time
> intercourse.  Such an opinion by this expert
> witness is not a comment on one of the
> ultimate issues of fact to be determined by
> the jury, that is, whether the defendant's
> conduct was against the victim's will.  See
> Davis v. Commonwealth, 12 Va. App. 728,
> 731-32, 406 S.E.2d 922, 923-24 (1991)
> (detective's testimony that a certain
> quantity of drugs was not consistent with
> personal use did not constitute an opinion
> that the defendant intended to distribute
> marijuana and, thus, did not invade the
> province of the jury).

Hussen, 257 Va. at 99, 511 S.E.2d at 109 (emphasis in original).

Patt's testimony in the instant case is virtually identical to

Brown's testimony in Hussen.  Patt testified that, "I have an

opinion that [the physical findings are] inconsistent with

consensual intercourse" and the basis for that opinion was

"[b]ecause she [sic] injuries she had are consistent with

non-consensual intercourse."  (Emphasis added.)  Patt's testimony

is "not a comment on one of the ultimate issues of fact to be

determined by the jury, that is, whether the defendant's conduct

was against the victim's will."  As in Hussen, Patt's testimony

only dealt with consistencies and inconsistencies.  Patt did not

testify that, in her opinion, appellant engaged in sexual

-

intercourse with A.L. against A.L.'s will, the ultimate issue in the case. She merely described A.L.'s injuries as "inconsistent" with consensual intercourse. Accordingly we hold that the trial court did not err in allowing her testimony over appellant's objection.

### III. Sufficiency

Lastly, appellant contends the prosecution's evidence "does not prove penetration," a necessary element of rape. "'Rape is defined as "sexual intercourse against the victim's will by force, threat, or intimidation."'" Johnson v. Commonwealth, 259 Va. 654, 681, 529 S.E.2d 769, 785 (2000) (quoting Wilson v. Commonwealth, 249 Va. 95, 100, 452 S.E.2d 669, 673, cert. denied, 516 U.S. 841 (1995) (quoting Hoke v. Commonwealth, 237 Va. 303, 310, 377 S.E.2d 595, 599, cert. denied, 491 U.S. 910 (1989))); see Code § 18.2-61. "'"Penetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient."'" Johnson, 259 Va. at 682, 529 S.E.2d at 785 (quoting Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997) (quoting Elam v. Commonwealth, 229 Va. 113, 115, 326 S.E.2d 685, 686 (1985))). "'Penetration may be prove[n] by circumstantial evidence and is not dependent on direct testimony from the victim that penetration occurred.'" Jett v. Commonwealth, 29 Va. App. 190, 194, 510 S.E.2d 747, 748 (1999) (quoting Morrison v. Commonwealth, 10 Va. App. 300, 301, 391 S.E.2d 612, 612

-

(1990)).  When convincing, circumstantial evidence may be more compelling and persuasive than direct evidence and is entitled to as much weight as direct evidence.  See id. at 194, 510 S.E.2d at 748-49.  Evidence concerning the condition, position, and proximity of the parties can provide sufficient evidence of penetration.  Morrison, 10 Va. App. at 301, 391 S.E.2d at 612.

A.L. testified that when she and appellant fell to the floor, appellant was on top of her.  He pulled her pants and underwear down to her knees and did the same to his pants and underwear.  A.L. testified that she "felt a sharp pain inside of [her] vagina area" when appellant's head was on the top of her stomach, his waist was between her knees and his hands were "on the floor laying flat beside my hips."  (Emphasis added.)  The pain continued for "five minutes" as appellant's "bottom half" was "[m]aking an up and down movement."  This evidence concerning the relative positions of the parties and the victim's testimony of concurrent pain was sufficient for the jury to find appellant penetrated A.L.  Furthermore, Patt testified that A.L. had recent injuries, including lacerations in the vagina.

Appellant's reliance on Moore is misplaced.  Unlike the instant case, the inconsistencies in Moore were developed in the prosecution's presentation of evidence during the victim's direct examination.  Moore, 254 Va. at 189, 491 S.E.2d at 741-42.  Furthermore, the Moore Court emphasized the unique

-

situation presented in the case by stating that "where inconsistencies have been developed during cross-examination of the victim or . . . where there has been other evidence contradicting the testimony of the victim . . . those types of credibility issues are for the jury to decide." Id. at 189, 491 S.E.2d at 742. Thus, A.L.'s admission on cross-examination that appellant used his hands on her and appellant's own testimony that he only used his hands on A.L. do not negate the Commonwealth's evidence. The inconsistencies presented an issue of credibility for the jury. Furthermore, A.L.'s testimony on direct was corroborated by Patt's testimony and conclusions. A.L.'s testimony on direct that during at least part of the time she felt the "sharp pain inside of [her] vagina area" both of appellant's hands were on the floor is sufficient to allow the jury to find that appellant penetrated A.L. with his penis.

Accordingly, we hold that the trial court did not err in allowing Patt to testify as an expert witness and that the evidence was sufficient to sustain appellant's conviction for rape.

Affirmed.

-