No. 83,716

STATE OF KANSAS, *Appellee*, v. GENTRY E. BOLTON, *Appellant*.

(23 P.3d 824)

Opinion filed June 1, 2001.

*Craig H. Durham,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J: Defendant Gentry E. Bolton appeals his convictions of premeditated first-degree murder and aggravated robbery. Defendant was sentenced to a term of life (hard 25) on the murder charge and 89 months on the aggravated robbery charge, which were to run consecutively. On appeal, defendant argues that the trial court (1) violated his right to confrontation by allowing the jury to view in the jury room during deliberations a surveillance videotape admitted into evidence; (2) failed to instruct on lesser included offenses; and (3) improperly articulated the *Batson* requirement in determining the State's motivation for removing black persons from the jury pool. Because we find that the trial court failed to conduct a proper *Batson* hearing, we will not address Bolton's first and second issues at this time.

*Batson v. Kentucky*, 476 U.S. 79, 89, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), held that the State's privilege to strike jurors though peremptory challenges is subject to the 14th Amendment Equal Protection Clause. Under *Batson*, trial courts are required to conduct a three-step test in assessing whether a peremptory challenge violates the Equal Protection Clause. *State v. Walston*, 256 Kan. 372, 377, 886 P.2d 349 (1994). First, the defendant must make a prima facie showing that the prosecution has used peremptory challenges on the basis of race. Second, once such a showing has been made, the burden shifts to the prosecution to articulate a race-neutral reason for striking the juror. Third, the trial court then decides whether the defendant has carried the burden of establishing purposeful discrimination. *Batson*, 476 U.S. at 96-98; *State v. Edwards*, 264 Kan. 177, 192, 955 P.2d 1276 (1998). Whether a prima facie showing has been made that the challenges were racially based is a question of legal sufficiency subject to plenary review, *State v. Sledd*, 250 Kan. 15, 21, 825 P.2d 114, *cert. denied* 506 U.S. 849 (1992).

## *Batson* Challenge

During jury selection, Bolton's defense counsel informed the court of a *Batson* challenge, stating:

"[DEFENSE COUNSEL]: Okay. I noted that the State, I believe, struck six African Americans half of their challenges for cause.

"THE COURT: What are the numbers of the jurors?

"[DEFENSE COUNSEL]: Number 16 was State's strike, number two—

"THE COURT: Just give me the number of the jurors.

[Counsel gives juror numbers.]

"THE COURT: Okay, Let me review those and see if there's a pattern.

"[DEFENSE COUNSEL]: Okay.

"THE COURT: I have reviewed the jurors that you mentioned and frankly have seen from my own notes obvious reasons for them to be removed from this panel. Based upon that and the other strikes from both sides, I can't see a pattern of discrimination displayed by the State in this case. I have reviewed each of your objections to these particular jurors with my own notes and I can find no pattern of discrimination whatsoever. And, therefore, I'm going to deny your *Batson* objections at this point.

"[DEFENSE COUNSEL]: Okay."

The jury panel was then sworn.

Under *Batson*, a defendant objecting to the State's use of peremptory challenges must first establish a prima facie case of purposeful discrimination during jury selection by demonstrating that relevant circumstances raise an inference that the State exercised peremptory challenges based upon the prospective juror's race. *People v. Thurmond*, 317 Ill. App. 3d 1133, 1138, 741 N.E.2d 291 (2000) (citing *Batson*, 476 U.S. at 96).

The *Batson* analysis was elaborated on in *Purkett v. Elem*, 514 U.S. 765, 131 L. Ed. 2d 834, 115 S. Ct. 1769 (1995), and the *Purkett* elaboration was recognized by our court in *State v. Vargas*, 260 Kan. 791, 795, 926 P.2d 223 (1996). Under this analysis, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason given will be deemed race-neutral. It is not at the second step where the validity of the strike is considered. It is at the third step where the burden of persuasion regarding the improper motivation for the strike rests with the opponent of the strike. It is this step that requires the judge to determine if the opponent of the strike has shown and proved purposeful discrimination. *Elem*, 514 U.S. at 767-68.

When the trial court rules on the ultimate question of discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot. *Hernandez v. New York*, 500

U.S. 352, 359, 114 L. Ed. 2d 395, 111 S. Ct. 1859 (1991); *State v. Edwards*, 264 Kan. 177, 194, 955 P.2d 1276 (1998). Under the circumstances of this case, whether the defendant made a prima facie showing of discrimination in the prosecutor's exercise of peremptory challenges is not an issue.

We note that both parties brief the *Batson* issue as a question of whether the trial court erred in determining the ultimate question of discrimination.

Bolton asserts that he presented a prima facie showing of discrimination to the trial court regarding the use of the prosecutor's peremptory strikes against black jurors. Bolton contends that the trial court erred by not requiring the prosecutor to state race-neutral reasons for certain of its peremptory strikes and that the judge's failure to require the State to articulate race-neutral reasons for its peremptory strikes was reversible error.

In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. *Hernandez*, 500 U.S. at 365; *Walston*, 256 Kan. at 379.

Even though there is no record of the trial judge's notes to support a finding of no pattern of discrimination, the State argues that a fair reading of the voir dire questions shows that the entire panel was treated equally and its exercise of peremptory challenges was not gauged to improperly exclude black panel members. The State requests that in determining the issue this court should rely on the trial court's experience in presiding over many trials and voir dires, and requests that rather than require a review of the jury selection procedure, this court should trust the trial judge's independent review of the State's use of peremptory strikes. The State points out that deference is normally paid to trial court findings on the issue of discriminatory intent because, as noted in *Batson*, the finding will largely turn on evaluation of credibility.

### Remedy for a *Batson* Violation

### Federal Courts

The United States Supreme Court has chosen to provide no guidance on the procedural requirements for conducting a *Batson*

analysis. It stated: "In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today." *Batson*, 476 U.S. at 99 n.24. The federal circuit courts have determined that remand for a *Batson* hearing is appropriate where no other reversible error exists. *Thorson v. State*, 653 So. 2d 876, 896 (Miss. 1994).

The Second Circuit remanded a case for a hearing on the trial court's *Batson* finding and, noting that 9 years had passed since the trial, also ordered that if the prosecution, under questioning from defense counsel, could not reconstruct its reasons for the strikes, a new trial would be necessary. *Jordon v. LeFevre*, 206 F.3d 196, 201-02 (2d Cir. 2000). See also *Barnes v. Anderson*, 202 F.3d 150, 156 (2d Cir. 1999) (if passage of time unduly impairs ability to make a fair determination of the intent of the prosecutor, the trial court may order a new trial); *Harris v. Kuhlmann*, 115 F. Supp. 2d 326 (E.D. N.Y. 2000). In *Barnes*, 202 F.3d at 157, the Second Circuit concluded that because the trial judge was deceased, the defendant should be awarded a new trial because the *Batson* analysis could not be performed effectively by another trial judge. See *State v. Myers*, 761 So. 2d 498 (La. 2000).

## State Courts

Citing similar cases, the Louisiana Supreme Court remanded a matter for a *Batson* hearing when the trial judge did not clearly decide whether the pattern of strikes by the prosecutor was enough to establish a prima facie showing of discriminatory intent. *State v. Givens*, 776 So. 2d 443, 450-51 (La. 2001). The Louisiana Supreme Court found a pattern of discrimination when the prosecutor struck six jurors of the suspect class for no apparent reason, resulting in a jury with one member of the suspect class. 776 So. 2d at 450-51. Finding that the pattern of strikes made the defense's prima facie case, the court remanded the matter for a trial court determination at an evidentiary hearing.

In *Graham v. State*, 738 N.E.2d 1096 (Ind. App. 2000), the Indiana Court of Appeals reversed the defendant's conviction and remanded for a new trial without ordering a remand for a *Batson*

hearing. The court did not indicate in its opinion why it was not ordering a remand for a hearing. The original trial court had offered its own reasons on the record for the State's challenges and the trial court did not require the prosecutor to state his reasons for the peremptory strikes to remove the only two black panel members.

Reversal is common when the defendant clearly establishes trial court error in making a determination that the prosecution offered credible race-neutral reasons for its strikes. See, *e.g., United States v. Huey*, 76 F.3d 638, 641 (5th Cir. 1996); *United States v. Bishop*, 959 F.2d 820 (9th Cir. 1992). The Ohio Court of Appeals ordered a reversal of a trial court's *Batson* ruling because the Court of Appeals determined that the defense had established a prima facie case of discrimination when it argued that the prosecution struck one black panel member even though there was no evidence from the questioning of the juror that he could not be fair and impartial. See *State v. Walker*, 139 Ohio App. 3d 52, 742 N.E.2d 1173 (2000).

On remand, the district court judge presiding conducts a hearing and provides the State with an opportunity to give a race-neutral reason for striking each minority panel member. If the trial court finds the State's explanation is not race-neutral, defendant is entitled to a new trial. If the trial court finds the State's explanation is race-neutral, defendant is given the opportunity to demonstrate that the explanation is a mere pretext. If defendant meets the ultimate burden of proving intentional discrimination, he or she is entitled to a new trial. If the defendant does not meet this burden, the *Batson* challenge was properly denied. *State v. McCord*, 538 S.E.2d 633, 645-46 (N.C. App. 2000).

## Kansas Procedure

The Kansas procedure to determine our issue is set out in *State v. Hood*, 242 Kan. 115, 744 P.2d 816 (1987). Hood was tried and convicted prior to the United States Supreme Court's decision in *Batson*. In the appeal, which postdated the *Batson* decision, the *Hood* court observed that *Batson* required a trial court initially to decide if the circumstances concerning the prosecutor's use of peremptory challenges created a prima facie case of discrimination

against black jurors. If the trial court determined that a prima facie case had been made, then the State must articulate its race-neutral explanation, following which the trial court then would have the duty to determine if the defendant has established purposeful discrimination. Once the prima facie case of discrimination is made, the burden shifts to the State; if the State does not come forward with a satisfactory race-neutral explanation for the exercise of its peremptory challenges, the prima facie showing of discrimination stands, and a new jury must be selected.

The *Hood* court noted that it appeared that the trial court, at the time it gave the State an opportunity to explain its peremptory challenge, made no record that a prima facie showing had been made. The *Hood* court determined to make no finding as to that, or as to whether the reasons apparent upon the record, or known to counsel or the court, for the removal of the only black jurors by the State by peremptory challenge were sufficient to counteract the defendant's showing of purposeful discrimination. It pointed out that an appellate court does not see or hear the examination of the jurors. It observed that since *Batson* had not been handed down at the time of trial, neither the trial court nor counsel could have been aware of the decision, and the prosecutor may well have had "neutral reasons" or further explanation to make to the trial court as to its exercise of the prosecution's peremptory challenges. The *Hood* court held that under such circumstances, the case must be remanded to the trial court not for further evidence but for further proceedings and argument, based upon the record and counsel's recollection, as to the propriety of the peremptory challenges exercised by the State. The trial court must then make the determinations required by *Batson*. *Hood*, 242 Kan. at 123.

Because of the unique procedure used here by the trial judge to determine the propriety of the State's removal of black panel members from the jury pool and because there is no record to be reviewed by an appellate court, we are therefore required to remand for a proper *Batson* hearing. The trial court hearing on remand does not involve the presentation of further evidence, but argument may be made before the trial court, based upon the trial record and counsel's recollection, as to the propriety of the per-

emptory challenges. If the trial court is unable to make a fair determination as required by *Batson*, it must grant the defendant a new trial.

Remanded with directions.