(36 P.3d 844)
No. 86,096

STATE OF KANSAS, *Appellee*, v. MARSHALL E. HUMPHREY, *Appellant*.

 Opinion
filed December 21, 2001. 

*Patrick H. Dunn*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Ian H. Taylor*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before RULON, C.J., GERNON and MARQUARDT, JJ.

RULON, C.J.: Defendant Marshall E. Humphrey appeals his conviction for rape under K.S.A. 21-3502(a)(1)(A), claiming the trial court wrongfully denied his *Batson* challenge and committed various prejudicial evidentiary errors at trial. We affirm.

A detailed recitation of the underlying facts is not necessary to the resolution of the issues presented. As such, we need not revisit the facts except when necessary in our discussion of the issues.

## The *Batson* Challenge

Defendant's first argument is based on the trial court's denial of his *Batson* challenge without first allowing defense counsel to argue its merits. See *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). The State contends the court was simply refusing to hear a motion without merit, and if the trial court did err, the case should not be reversed, but instead remanded for a *Batson* hearing. "In reviewing a *Batson* violation concerning the State's use of a peremptory challenge, the applicable appellate standard of review is whether the trial court abused its discretion in determining if the challenged strikes were constitutionally permissible." *State v. Smallwood*, 264 Kan. 69, 88, 955 P.2d 1209 (1998).

*Batson*, 476 U.S. at 89, held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution applies to the State's privilege to strike jurors through peremptory challenges. *Batson* requires the trial court to follow a three-step test to determine whether the Equal Protection Clause has been violated. First, the defendant must make a prima facie showing that the State's peremptory challenges were exercised on the basis

of race. Second, once such a showing is made, the State has the burden to articulate a race-neutral reason for striking the juror. Third, the trial court must decide whether the defendant has met the burden of establishing purposeful discrimination. 476 U.S. at 96-98; *State v. Edwards*, 264 Kan. 177, 192, 955 P.2d 1276 (1998).

To make a prima facie showing required by the first step of the *Batson* test, the defendant must demonstrate the prosecution "has exercised peremptory challenges to remove from the venire members of a certain race or gender and that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the jurors from the jury on account of their race or gender. [Citation omitted.]" *Edwards*, 264 Kan. at 193-94. The defendant is also entitled to rely on the fact that peremptory challenges permit those who are of a mind to discriminate to do so. *State v. Sledd*, 250 Kan. 15, 19, 825 P.2d 114, *cert. denied* 506 U.S. 849 (1992) (quoting *Batson*, 476 U.S. at 96).

The defendant is African-American. After the parties exercised their peremptory strikes before trial, defense counsel said: "Your Honor, I'd like to make a *Batson* challenge." The trial court responded: "You may like to, but we'll do it after the jury's been selected." The jurors were sworn and dismissed from the courtroom. As soon as they were gone, the following exchange took place:

"THE COURT: Defendant's *Batson* challenge is overruled. The defendant doesn't meet the threshold test.

"Anything else we need to put on the record this afternoon?

"MS. DONNELLY-MILLS: Not for the State.

"MR. MAMALIS [for the defense]: Your Honor, I guess for the record I would simply like to say that Mr. Humphrey's African-American. Mr. Evans [an African-American juror who was struck] was—

"THE COURT: I just ruled. I don't listen to arguments on my rulings. If you wanna do something about that, you can save it for a motion for a new trial, you can file an affidavit, you can file a separate pleading. But I will not allow you to argue my rulings after I had made them. Do you have any questions about that?

"MR. MAMALIS: Your Honor, no."

After the trial had commenced, the trial court noted that one of the remaining jurors was African-American and another was Asian. Later, in his motion for a new trial, defendant argued the trial court

erred in denying his *Batson* challenge regarding Mr. Evans, but defendant did not proffer evidence to make a prima facie case for a *Batson* violation.

The trial court clearly did not give the defense the opportunity to articulate how the facts and circumstances of the voir dire examination raised the inference that the State exercised peremptory challenges to remove members of a certain race from the jury on account of their race. Defendant's *Batson* challenge is a question of legal sufficiency, and appellate courts have plenary review of the trial court's determination of whether the defendant has made a prima facie showing. *Sledd*, 250 Kan. at 21. Because this court has complete review of this issue, we can review the facts and circumstances to determine whether it could be inferred from this record that the State removed Mr. Evans because of discriminatory intent.

In *Sledd*, the State had used 2 of its 12 peremptory challenges to exclude 2 out of 4 possible African-American jurors. Our Supreme Court concluded that the defendant had not made a prima facie showing of a *Batson* violation because there was no claim that the State's action exhibited a pattern to exclude African-Americans. 250 Kan. at 22. Similarly, in this case the State used one of its peremptory challenges to strike one of the two possible African-American jurors. In *Batson*, Justice White commented in his concurrence: "The Court emphasizes that using peremptory challenges to strike blacks does not end the inquiry; it is not unconstitutional, without more, to strike one or more blacks from the jury. The judge may not require the prosecutor to respond at all." 476 U.S. at 101; quoted in *Sledd*, 250 Kan. at 20.

Recently, in *State v. Bolton*, 271 Kan. 538, 544, 23 P.3d 824 (2001), our Supreme Court remanded a case to hold a proper *Batson* hearing when the trial court did not require the State to perform the second step and present a race-neutral reason for striking six African-American jurors for cause. After a review of federal and state cases from other jurisdictions, the *Bolton* court held:

"Because of the unique procedure used here by the trial judge to determine the propriety of the State's removal of black panel members from the jury pool *and because there is no record to be reviewed by an appellate court, we are therefore required to remand for a proper Batson hearing.* The trial court hearing

on remand does not involve the presentation of further evidence, but argument may be made before the trial court, based upon the trial record and counsel's recollection, as to the propriety of the peremptory challenges. If the trial court is unable to make a fair determination as required by *Batson*, it must grant the defendant a new trial." (Emphasis added.) 271 Kan. at 544-45.

The factual circumstances in *Bolton* differ from the present case, however, because the *Bolton* court did not examine the record to determine whether the defendant made a prima facie showing. "When the trial court rules on the ultimate question of discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot. [Citations omitted.]" 271 Kan. at 540. In *Bolton*, there was no record regarding the State's reasons for removing the six African-American jurors so the case had to be remanded for further proceedings.

Based upon our review of this record, we conclude it was impossible for the defendant to make a prima facie case of racial discrimination. Needless to say, however, the better practice is for the trial court to afford the defense an opportunity to articulate how the facts and circumstances of voir dire examination may raise the inference that the State has exercised peremptory challenges to remove members of a certain race from the jury simply based upon racial considerations.

### Improper Direct Examination

Defendant next argues the trial court engaged in judicial misconduct by *sua sponte* authorizing the State to treat the victim, B.K., as a hostile witness on direct examination, thereby denying defendant a fair trial. The State contends the trial court exercised its sound discretion in allowing the State to ask leading questions in order to maintain a tolerable pace at trial.

The victim here suffers from certain mental deficiencies, including attention deficit disorder, a behavioral disorder, and various learning disabilities which are severe enough to prevent her from working outside the home. This record reflects that during the State's direct examination, the victim paused before answering on numerous occasions. This hesitation increased when the State asked the victim about the details of the incident. Over defendant's

objection, and without an explanation of its reason, the trial court authorized the State to ask the victim leading questions. A later comment suggests the trial court was frustrated with the sluggishness of the proceedings: "We've spent half an hour doing five minutes worth of questioning. Let's get on with it."

Contrary to defendant's assertion, the trial court never declared the victim to be a hostile witness. Although hostility of the witness is a common basis for allowing leading questions on direct examination, Kansas courts have also permitted leading questions when the witness is unable to easily answer the question posed. "Whether leading questions should be permitted in a particular case rests with the sound discretion of the trial court." *State v. Cook*, 224 Kan. 132, Syl. ¶ 1, 578 P.2d 257 (1978). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

In *State v. Jones*, 204 Kan. 719, 466 P.2d 283 (1970), the State's use of leading questions with an 8-year-old rape victim was found to be permissible despite the defendant's assignment of error. The *Jones* court noted the defendant was able to cross-examine the victim in the same manner as the State, and the credibility and weight to be afforded to her testimony were to be determined by the jury. 204 Kan. at 728. Here, as in *Jones*, defendant's counsel was given the opportunity to fully cross-examine the victim. We conclude the trial court's action was not an abuse of discretion.

## State's Expert Witness

During its examination of Nurse Harrell, the State asked: "[D]o you have an opinion to a reasonable degree of medical certainty as to whether or not the injuries documented [during your examination of the victim] are consistent with the history given?" The defense objected, claiming Nurse Harrell was not competent to make such a diagnosis. The trial court overruled this objection, and Nurse Harrell answered: "The injuries are consistent with blunt

force penetrating trauma." Nurse Harrell further discussed why such injuries are indicative of nonconsensual sex.

The defense argues the trial court erred in permitting Nurse Harrell to testify regarding the cause of the victim's injuries because she was not qualified to render a diagnosis on such matters. The State asserts Nurse Harrell possessed the special knowledge required to permit her to characterize the nature of the victim's injuries.

K.S.A. 60-456(b) requires expert witness testimony in the form of inferences or opinions to be "within the scope of the special knowledge, skill, experience or training possessed by the witness." The trial court has broad discretion regarding the qualifications of an expert witness and the admissibility of expert testimony. Expert opinion testimony is admissible if it aids the jury with unfamiliar subjects or interpreting technical facts or if it assists the jury in arriving at a reasonable factual conclusion from the evidence. Necessity is the basis for the admission of expert testimony, arising out of the particular circumstances of the case. Expert conclusions or opinions are not necessary if the normal experience and qualifications of jurors permit them to draw proper conclusions from the given facts and circumstances. *Smallwood*, 264 Kan. at 80.

The defense claims that *State v. Willis*, 256 Kan. 837, 888 P.2d 839 (1995), held "that non doctors may not give medical diagnosis," which is dispositive of this issue. The holding in *Willis* may not be so broad, however. The *Willis* court held that a licensed social worker was not qualified to diagnose medical and psychiatric conditions, namely post-traumatic stress disorder. 256 Kan. at 846. To do so, the expert must have special training in that field of psychology. 256 Kan. at 847. Here, Nurse Harrell never attempted to diagnose the victim's mental state, which she clearly would not have been qualified to do. Instead, she gave her opinion regarding the cause of the victim's injuries.

The record shows Nurse Harrell received her nursing degree from Wichita State University in 1976 and worked in the sexual assault office at Via Christi-St. Joseph Medical Center. She had been an emergency room nurse for 18 years. To join the hospital's Sexual Assault Response Team, Nurse Harrell attended a 40-hour

class and a 40-hour preceptorship involving hands-on experience dealing with rape victims. She had 7 years' experience working in the area and had attended numerous conferences on the subject. Nurse Harrell testified she had performed over 500 sexual assault examinations. Unfortunately, this testimony did not directly discuss the skills she learned in her classes, in particular whether Harrell learned to distinguish consensual sex injuries from nonconsensual sex injuries.

In *State v. Mullins*, 267 Kan. 84, 977 P.2d 931 (1999), a registered nurse had examined the victim and testified that the victim's physical exam was normal and that the victim showed no signs of physical abuse. The *Mullins* court held that the nurse's "qualifications and experiences clearly show she possessed the education and background necessary to testify as an expert on the subject of child sexual abuse." 267 Kan. at 94.

A similar issue has been addressed by the Virginia Court of Appeals in *Velazquez v. Com.*, 543 S.E.2d 631 (Va. App. 2001). There, the defendant was accused and convicted of raping a 15-year-old girl. On appeal, the defendant claimed the trial court erred in allowing a sexual assault nurse examiner to testify regarding the cause of the victim's injury. The *Velazquez* court identified the nurse's qualifications, which were quite similar to those of Nurse Harrell's, and specifically mentioned "additional training in crisis intervention, physical assessment, injury recognition, documentation, evidence collection, photography and injury assessment." 543 S.E.2d at 634-35. The *Velazquez* court held that based on the nurse's training and experience, the nurse had knowledge concerning matters beyond a lay person's common knowledge which would assist the jury in understanding the evidence. 543 S.E.2d at 635.

Nurse Harrell's testimony that she would characterize the victim's injuries as resulting from blunt force penetrating trauma was within her realm of expertise. Nurse Harrell had experience examining alleged rape victims and certainly possessed enough knowledge to testify as to the general cause of the physical injuries she observed. Based on her training and experience, Nurse Harrell was also able to inform the jury of this fact as well. The trial court

did not abuse its discretion in allowing Nurse Harrell to testify regarding the victim's injuries.

## The Ultimate Issue

Next, defendant claims Nurse Harrell invaded the province of the jury by testifying that the blunt force penetrating trauma injuries found on the victim were characteristic of nonconsensual sex.

When asked whether the victim's injuries were consistent with the history the victim gave, Nurse Harrell answered they were consistent with "blunt force penetrating trauma." The State further inquired how the victim's injuries were different from injuries usually associated with consensual sex, to which Nurse Harrell answered that generally the injuries were different because of the amount of lubrication present, the resistance involved, and the position of the person. According to Nurse Harrell, generally, a person does not suffer injury during consensual sex. Nurse Harrell agreed that the victim's injuries could be characterized as a mounting injury and further confirmed the victim's injuries were consistent with the history given by the victim. On cross-examination, however, Nurse Harrell agreed that she could not say exactly how the victim's injuries were caused.

While an expert may give an opinion on an ultimate issue as provided in K.S.A. 60-456(d), he or she may only do so insofar as it aids the jury in interpreting technical facts or understanding the evidence. An expert witness may not evaluate the weight or credibility of the evidence because those matters are strictly within the province of the jury. *Mullins*, 267 Kan. at 94.

In *State v. Bressman*, 236 Kan. 296, 689 P.2d 901 (1984), the defendant was accused of rape. The defense denied having any physical contact with the victim. The victim was examined at the hospital shortly after the alleged incident by a physician, who found no physical evidence that a rape had occurred. At trial, the physician testified that based on her experience receiving possible rape patients at the emergency room, the victim's emotional state was consistent with the behavior of a person who had been raped. Furthermore, the physician expressed the opinion that the victim was raped. Concluding prejudicial error, our Supreme Court reversed.

236 Kan. at 303. The physician was not an expert in psychiatry, she did not examine the victim to make a psychiatric diagnosis, and there was no evidence that her conclusions were generally accepted in the field of psychiatry. The court further concluded such testimony invaded the province of the jury because the jury could just as easily have evaluated the implications of the victim's demeanor when she was admitted to the hospital. 236 Kan. at 304. The present case can be differentiated from *Bressman*.

The challenged testimony here is similar in nature to the expert testimony complained of in *State v. Struzik*, 269 Kan. 95, 5 P.3d 502 (2000). There, the defendant was accused of first-degree felony murder based on the death of a child from abuse. The defendant claimed that the child's injuries were a result of an accidental fall down the stairs. At trial, the first physician testified that the victim's fatal brain trauma was not consistent with a fall down the stairs. Similarly, the second physician testified: "I don't know exactly what happened and who did it, but there is no other explanation [besides abuse] for this child's injuries." 269 Kan. at 103. The *Struzik* court held that the physicians' testimony, while addressing the ultimate issue of the defendant's guilt, was based on medical evidence involving the character and severity of the child's injuries and not an assessment of the defendant's veracity. 269 Kan. at 101. Thus, their testimony was admissible.

Similarly, in *State v. Clements*, 241 Kan. 77, 80, 734 P.2d 1096 (1987), our Supreme Court concluded it was permissible for a mental health therapist with expertise in sexually abused victims to testify that the victim's progress in therapy was consistent with what he would expect from a young boy who had been sodomized because the witness did not directly testify regarding the veracity of the victim's story.

In the Virginia case of *Velazquez*, the court concluded that a registered nurse was qualified as an expert in the diagnosis of sexual assault because of her specialized training. 543 S.E.2d at 636. The court held the trial court did not err in allowing her to testify regarding her observations and conclusions based on the following testimony:

"[The nurse] personally observed the victim and the tests she administered showed [the victim's] injuries to be a 'recent injury' with 'no lubrication,' indicating an absence of the human sexual response. She concluded her descriptive testimony by stating that in her opinion her findings were 'inconsistent with consensual intercourse' because the injuries [the victim] had are 'consistent with nonconsensual intercourse.' " 543 S.E.2d at 636.

Importantly, the nurse did not testify that the defendant engaged in sexual intercourse with the victim against her will, which was the ultimate issue in the case. Thus, the challenged testimony was admissible. 543 S.E.2d at 637.

Here, Nurse Harrell did not testify that defendant's story was not credible, but rather testified that the victim's injuries were consistent with injuries caused by blunt force penetrating trauma. Nurse Harrell agreed that blunt force penetrating trauma does not have to be caused by a penis. Furthermore, Nurse Harrell testified she could not say with 100% accuracy what caused the victim's injuries. We are satisfied that under the facts presented Nurse Harrell was qualified to render an opinion regarding the causation of the victim's injuries. Such testimony was admissible as it did not invade the province of the jury.

## Limitation of Defense Cross-Examination

Finally, defendant asserts the trial court impermissibly limited his defense in violation of his right to due process by preventing his counsel from asking Nurse Harrell about the condition of the victim's clothes when the victim was admitted to the hospital. The State argues the defense was trying to authenticate a business record through a witness who did not work for that business, and the trial court did not err in limiting the defense's questioning.

When reviewing a constitutional challenge to the admission or exclusion of evidence, the appellate court applies the federal constitutional rule. Under that rule, an error may not be held harmless unless the appellate court is willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Lyons*, 266 Kan. 591, 598, 973 P.2d 794 (1999). Furthermore, "the right to cross-examine witnesses is subject to evidentiary rules, and the trial court has broad discretion

in controlling the examination. [Citations omitted.]" *State v. Harmon*, 254 Kan. 87, 95, 865 P.2d 1011 (1993).

Simply said, we have carefully reviewed this record and firmly conclude that even if the trial court erred in limiting the defense's cross-examination of Nurse Harrell, such error, if any, at best was harmless error.

Affirmed.